UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMAD RIMI et al., )
)
Petitioner, )
)
v. ) Civil Case No. 13-0908 (RJL)
)
BARACK H. OBAMA et al., )
)
Respondents. )
)

**MEMORANDUM OPINION**

July 23, 2014 [# 6]

Petitioner Mohammad Rimi, through his "next friend" Omar Deghayes, brings this independent action pursuant to Rule 60 of the Federal Rules of Civil Procedure seeking reinstatement of his habeas corpus petition in Civil Case No. 05-2427. *See* Independent Action for Equitable Relief From Order Dismissing Habeas Corpus Pet. ("Indep. Action") [Dkt. # 1]. Rimi is a former Guantanamo Bay detainee who was transferred to Libya in 2006. As a result of that transfer, this Court dismissed his habeas petition as moot in 2009. Rimi now asks the Court to vacate that dismissal order, alleging that newly discovered evidence released by the "WikiLeaks" website contradicts testimony the Government[1] submitted to this Court in 2008 as the basis for dismissal and would have altered the Court's conclusion that the petition was moot. In response, the

---

[1] Rimi's independent action names as respondents President Barack Obama, Secretary of Defense Charles Hagel, the Commander of Joint Task Force Guantanamo, and the Commander of Joint Detention Operations Group, Joint Task Force Guantanamo. For simplicity, I will refer to respondents collectively as "the Government."

Government has moved to dismiss Rimi's independent action under Rule 12(b)(6) for failure to state a claim, on the ground that his prior habeas case remains moot. *See* Resp'ts' Mot. to Dismiss Pet'r's Independent Action Seeking Reinstatement of Habeas Corpus Pet. ("Gov't's Mot.") [Dkt. # 6].[2] For the following reasons, I agree with the Government, and therefore I will GRANT its motion and DISMISS this independent action.

## BACKGROUND

Petitioner Mohammad Rimi, a Libyan citizen, was taken into custody by U.S. armed forces in Afghanistan in 2001 and was subsequently transferred to the U.S. Naval Base in Guantanamo Bay, Cuba. Indep. Action ¶¶ 1, 9. On December 19, 2005, Rimi filed a petition for a writ of habeas corpus challenging his designation as an "enemy combatant" and the legal basis of his detention. *See* Pet. for Writ of Habeas Corpus, *Rimi v. Obama*, Civ. No. 05-2427 (D.D.C.) [Dkt. # 1]. While that petition was pending, however, the Government notified this Court on December 20, 2006, that "the United States has relinquished custody of petitioner Mohammed Rimi . . . and transferred him to the control of the Government of Libya." Notice of Transfer of Pet'r, *Rimi v. Obama*,

---

[2] The Government also moved to dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1), arguing that Rimi's purported next friend, Omar Deghayes, lacks standing to litigate the case on behalf of Rimi. *See* Gov't's Mot. at 2, 7-9. However, in light of petitioner's counsel's representation that he spoke with Rimi via telephone on September 18, 2012, and Rimi "confirmed his desire to proceed with litigating his habeas corpus petition," Pet'r's Opp'n to the Gov't's Mot. to Dismiss ("Pet'r's Opp'n") at 5 n.2 [Dkt. # 8], the Government now concedes that its next friend standing argument is moot if Rimi pursues this action as a direct action by himself. *See* Resp'ts' Reply in Supp. of Mot. to Dismiss ("Gov't's Reply") at 1 n.1 [Dkt. # 10].

Civ. No. 05-2427 (D.D.C.) [Dkt. # 13]. Based on his transfer, the Government moved to dismiss Rimi's habeas petition as moot.³

In response, Rimi argued that his case was not moot on two, alternative grounds. First, he claimed he remained in the constructive custody of the U.S. even after his transfer from Guantanamo. *See* Pet'rs' Consolidated Mem. in Continued Supp. of Their Pets. for Writs of Habeas Corpus ("Pet'rs' 2008 Mem.") at 9-12, *Rimi v. Obama*, Civ. No. 05-2427 (D.D.C.) [Dkt. # 26]. Second, he claimed that even if he was, in fact, no longer in U.S. custody, his continued detention by the Libyan government was a "collateral consequence" of his detention at Guantanamo. *See id.* at 12-16. I rejected both of Rimi's arguments and dismissed his petition as moot. *See Rimi v. Obama*, 2009 WL 4251097 (D.D.C. Nov. 23, 2009).

Thereafter, Rimi appealed my decision, but our Circuit Court held his appeal in abeyance pending the disposition of a related appeal from a decision by my colleague, Judge Hogan, dismissing as moot the habeas cases of other former Guantanamo detainees. *See* Order, *Rimi v. Obama*, No. 10-5021 (D.C. Cir. July 27, 2010); *see also In re Petitioners Seeking Habeas Corpus Relief in Relation to Prior Detentions at Guantanamo Bay*, 700 F. Supp. 2d 119 (D.D.C. 2010) (Hogan, J.). On July 22, 2011, the Circuit Court affirmed Judge Hogan's decision as to two of the former detainees who appealed, holding that the collateral consequences doctrine (assuming, without deciding,

---

³ *See* Resp'ts' Mot. to Dismiss at 11-13, *Rimi v. Obama*, Civ. No. 05-2427 (D.D.C.) [Dkt. # 15]; Status Report In Response to Ct.'s July 3, 2008 Order, *Rimi v. Obama*, Civ. No. 05-2427 (D.D.C.) [Dkt. # 22]; Resp'ts' Brief Filed Pursuant to the Ct.'s Order of July 30, 2008 Regarding Transferred Pet'rs, *Rimi v. Obama*, Civ. No. 05-2427 (D.D.C.) [Dkt. # 25].

it applied) did not save their petitions from mootness. *See Gul v. Obama*, 652 F.3d. 12 (D.C. Cir. 2011).[4] In the wake of the *Gul* decision, the Government moved for summary affirmance of Rimi's pending appeal, arguing that the case was controlled by *Gul* and therefore moot. *See* Gov't's Mot. for Summ. Affirmance, *Rimi v. Obama*, No. 10-5021 (D.C. Cir. Aug. 29, 2011). The Circuit Court denied that motion, however, and scheduled the case for briefing on the merits. *See* Order, *Rimi v. Obama*, No. 10-5021 (D.C. Cir. Aug. 10, 2012); Order, *Rimi v. Obama*, No. 10-5021 (D.C. Cir. Aug. 30, 2012).

In 2012, while that appeal was pending, Rimi's counsel apparently discovered certain documents released by the WikiLeaks website that they contend pertain to Rimi's detention at Guantanamo and his transfer to and detention in Libya. Indep. Action ¶¶ 24-28. The first document is a purported March 2006 Department of Defense "Detainee Assessment" regarding Rimi, which includes a recommendation concerning transferring him to another country and the circumstances of such a transfer. *See* Indep. Action ¶ 26. Next, two purported State Department cables from December 2007 and February 2009 appear to document visits to Rimi by U.S. government personnel during his detention in Libya and reference an "MOU," or memorandum of understanding, between the U.S. and Libya regarding Rimi's detention. *See* Indep. Action ¶ 27.[5] Following a procedural

---

[4] The Court of Appeals subsequently denied en banc review, and the Supreme Court denied a petition for certiorari, *see Gul v. Obama*, -- U.S. --, 132 S. Ct. 1906 (2012) (No. 11-7827).

[5] The Government "neither confirm[s] nor den[ies] the authenticity of [the purported Department of Defense and State Department documents relied on by petitioner], including allegedly classified documents published by outside entities such as WikiLeaks." Gov't's Reply at 8.

4

back-and-forth with the Circuit Court regarding his attempts to supplement the record with these three documents,[6] Rimi filed the instant action in this Court on June 17, 2013, seeking equitable relief from my 2009 dismissal order and reinstatement of his original petition. In brief, Rimi argues that the newly discovered evidence from WikiLeaks "show[s] that Mr. Rimi was in the constructive custody of the United States while he was incarcerated in Libya," Indep. Action ¶ 28, and therefore, had it been before this Court, it would have altered my 2009 ruling that his habeas petition was moot. *See* Indep. Action ¶¶ 24-28, 35-41.

While all these procedural issues were playing out, however, Rimi's habeas case was overtaken by real-world events. Upon his transfer from U.S. custody, Rimi alleges he was not only held in Libyan prison, *see* Indep. Action ¶ 13, but also tried, convicted, and sentenced to twenty-five years imprisonment by the Libyan government, *see* Pet'r's Opp'n at 12. Furthermore, he alleges that "[i]n about August of 2011, [he] was released from Abu Salim prison [in Libya] when revolutionaries stormed that facility." Indep.

---

Because the three documents are marked with a "Secret" classification and because the details of their contents are not essential to my decision today, I refer to them only in general terms.

[6] In October 2012, Rimi moved for leave to file a motion to supplement the record and for summary remand to the District Court. The Circuit Court denied petitioner's motion for remand, but noted that the denial was without prejudice to his renewing the motion to supplement the record in the District Court pursuant to Federal Rule of Civil Procedure 60(b). *See* Order, *Rimi v. Obama*, No. 10-5021 (D.C. Cir. Jan. 30, 2013). Rimi then moved for reconsideration of that order, arguing it would be futile for him to file a Rule 60(b) motion to supplement the record in the District Court because such a motion would be out of time. *See* FED. R. CIV. P. 60(c) (imposing one year limitation on Rule 60 motions brought on the basis of newly-discovered evidence). The Circuit Court once again denied Rimi's remand request, but noted the denial was "without prejudice to [Rimi's] ability to present evidence to the district court in the first instance." *See* Order, *Rimi v. Obama*, No. 10-5021 (D.C. Cir. Apr. 16, 2013). That order also held the appeal in abeyance, which remains the current status of that appeal. *See id.*

Action ¶ 29; *see also* Pet'r's Opp'n at 5 (acknowledging that Rimi "left Abu Salim prison during the uprising in Libya").[7] Rimi thus concedes that he is no longer in anyone's custody. *See* Pet'r's Opp'n at 14 (stating Rimi "is not incarcerated").[8]

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether the petitioner has pleaded facts sufficient to "raise a right to relief above the speculative level," assuming that the facts alleged are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, petitioner Rimi brings this independent action pursuant to this Court's equitable power to relieve him from a prior order. Under Rule 60, a court "may relieve a party . . . from a final judgment, order, or proceeding" for several reasons, including "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." FED. R. CIV. P. 60(b)(2). While a Rule 60(b) motion must be filed in the underlying case no more than a year after the entry of the order—a deadline petitioner here concedes has passed, *see* Pet'r's Opp'n at 7—this Court may nonetheless "entertain an independent action to relieve a party from a judgment, order, or proceeding" under Rule 60(d)(1).[9]

---

[7] Petitioner's counsel assert that they learned of Rimi's release from Libyan prison in a September 2012 phone call "with person(s) having direct knowledge of it." Indep. Action ¶ 30.

[8] Based on Rimi's representation that he was no longer in Libyan custody, the Government once again moved for summary affirmance in the pending appeal. *See* Appellees' Renewed Mot. for Summ. Affirmance and Opp'n to Pet'r's Mot. for Remand Order, *Rimi v. Obama*, No. 10-5021 (D.C. Cir. Nov. 15, 2012). Once again, however, the Circuit Court denied the motion. *See* Order, *Rimi v. Obama*, No. 10-5021 (D.C. Cir. Jan. 30, 2013).

[9] "The one-year limit on certain of the Rule 60(b) motions is inapplicable to the independent action, leaving it as the method—indeed, the only method—to be had by federal-court litigants

To obtain relief through such an independent action, the petitioner must meet a demanding standard: "an independent action should be available *only* to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998) (emphasis added); *accord Carr v. District of Columbia*, 543 F.2d 917, 927 (D.C. Cir. 1976) ("the exception for equitable interposition by independent suit rests on stringent rules limited to circumstances which render it manifestly unconscionable that a judgment be given effect") (internal quotation marks and citation omitted). And in an independent action seeking relief, as here, based on newly-discovered evidence, the petitioner "'must meet the same substantive requirements as govern a motion for like relief under Rule 60(b): he must show that the evidence was not and could not by due diligence have been discovered in time to produce [before the order issued]; that it would not be merely cumulative; and that it would probably lead to a judgment in his favor.'" *Carr*, 543 F.2d at 927 (quoting *Philippine Nat'l Bank v. Kennedy*, 295 F.2d 544, 545 (D.C. Cir. 1961)).

## ANALYSIS

Petitioner Rimi seeks reinstatement of the habeas petition this Court dismissed as moot in 2009. Specifically, he contends that this Court's prior decision rested on representations made in a Department of Defense official's declaration that are contradicted by newly discovered evidence that was then within the Government's possession, and that this Court would have reached a different result absent those "misrepresentations." Therefore, in his view, vacating that dismissal order is warranted

---

whose remedy by motion has become time-barred." *Carr v. District of Columbia*, 543 F.2d 917, 926 (D.C. Cir. 1976) (footnotes omitted).

7

to prevent a "grave miscarriage of justice." For the reasons discussed below, however, I conclude that no such injustice exists here because the underlying petition he seeks to reinstate remains moot. This Court lacks subject matter jurisdiction over that moot petition, and therefore this independent action fails to state a claim upon which relief can be granted.

I. **Mootness**

"The mootness doctrine, deriving from Article III, limits federal courts to deciding 'actual, ongoing controversies.'" *Clarke v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question . . ."). The requirement of a live controversy applies "at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks and citation omitted). Accordingly, "*throughout the litigation*, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (emphasis added)).

In the context of habeas, a petitioner can satisfy the live controversy requirement in one of two ways. First, while a petitioner is in custody, his habeas petition "always satisfies the case-or-controversy requirement, because the incarceration . . . constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer*, 523 U.S. at 7. Once released from custody, however, a petitioner

8

must demonstrate "some concrete and continuing injury other than the now-ended incarceration"—that is, a "collateral consequence' of his conviction—in order to avoid mootness. *Id.*; *see also Qassim v. Bush*, 466 F.3d 1073, 1078 (D.C. Cir. 2006) (petitioner who is no longer in custody must "demonstrate that he was in custody at the time he filed the petition *and* that his subsequent release has not rendered the petition moot") (citation and internal quotation marks omitted). Our Circuit Court has addressed the collateral consequences doctrine in the specific context of former Guantanamo detainees, and—assuming, without deciding, it applied—held that collateral consequences may not be presumed; "[a] former detainee . . . must . . . make an actual showing his prior detention or continued designation burdens him with 'concrete injuries.'" *Gul*, 652 F.3d at 17 (quoting *Spencer*, 523 U.S. at 14); *see also id.* at 21 (burden of showing petition presents a live controversy rests upon petitioner). As explained below, Rimi is neither in custody nor able to demonstrate any cognizable collateral consequence of his prior detention at Guantanamo, and therefore his habeas case remains moot.

## II. Constructive Custody

The federal habeas statute confers jurisdiction on District Courts if a petitioner is "in custody under or by the color of the authority of the United States." 28 U.S.C. § 2241(c). Back in 2008, in his underlying habeas case, Rimi pressed the argument that his *then-ongoing* detention in Libya was attributable to the U.S., and thus he remained in the constructive custody of the U.S. even after his transfer from Guantanamo. *See* Pet'rs' 2008 Mem. at 9-12. I rejected this constructive custody argument in my 2009 order of dismissal, relying on a declaration submitted by the Government explaining that when a

9

detainee is transferred out of Guantanamo, he is "transferred entirely to the custody and control of the [receiving] government, and once transferred, is no longer in the custody and control of the United States;" at that point, "the individual is detained, if at all, by the foreign government pursuant to its own laws and not on behalf of the United States." Decl. of Deputy Assistant Secretary of Defense for Detainee Affairs Sandra L. Hodgkinson ("Hodgkinson Decl."), at ¶ 5 (attached as Ex. 3 to Gov't's Mot.) [Dkt. # 6-3]; *see Rimi*, 2009 WL 4251097, at *2.

Now, in this independent action, Rimi contends that newly discovered evidence from WikiLeaks contradicts the Hodgkinson Declaration and shows that he was, in fact, in the constructive custody of the U.S. when subsequently detained in Libya. *See* Pet'r's Opp'n at 4, 7. Given that I relied on that declaration in reaching my decision in 2009 that Rimi was not in constructive custody—and hence relied on it, in part, in ultimately concluding that his petition was moot—Rimi now argues that the WikiLeaks documents would have led to a ruling that his petition was not moot. *See* Pet'r's Opp'n at 9-11.[10]

Doubtful, but this is all beside the point. It is undisputed that Rimi *is no longer in Libyan custody*, *see* Pet'r's Opp'n at 5, 14, and therefore it is irrelevant—for purposes of analyzing mootness—whether or not Rimi was, *in the past*, in the U.S.'s constructive custody in Libya. *See Spencer*, 523 U.S. at 18 ("mootness, however it may have come about, simply deprives [the court] of [its] power to act"). Simply put, reinstating Rimi's prior habeas case would be futile because it cannot remedy the concrete injury of *custody*

---

[10] Rimi also argues that the Government's alleged "misrepresentation" in the Hodgkinson Declaration is, itself, sufficient to warrant reversal of my dismissal order. *See* Pet'r's Opp'n at 11-12. Since this argument, even if accepted, would not affect my mootness analysis, I disagree.

itself if he is no longer in anyone's custody (constructive or otherwise). Accordingly, Rimi's petition cannot be saved from mootness on the ground he is presently in custody, and he must instead demonstrate "collateral consequences" of his prior detention to continue the suit.

### III. Collateral Consequences

Assuming the collateral consequences doctrine even applies,[11] a former Guantanamo detainee must "make an actual showing his prior detention or continued designation burdens him with 'concrete injuries.'" *Gul*, 652 F.3d at 17 (quoting *Spencer*, 523 U.S. at 14). Now, as before, Rimi has failed to meet that burden because his alleged injuries—his Libyan criminal conviction (and the attendant risk that he "may be subject to arrest by Libyan authorities to serve out the remainder of [his] sentence" because he "was never officially released or pardoned by the Libyan government"), *see* Pet'r's Opp'n at 12-14—are neither traceable to the Government nor redressable by this Court.

First, the Libyan government's decision to try and convict Rimi is no more traceable to the U.S. than its prior decision to detain him. *See Rimi*, 2009 WL 4251097, at *2 ("[C]ollateral consequences that are 'based on the discretionary decisions of' someone other than respondents, alone, effectively render this case moot." (quoting *Al Joudi v. Bush*, 2008 WL 821884, at *1 (D.D.C. Mar. 26, 2008))). Second—just as I previously found regarding his Libyan detention, *see id.* at *2—even if Rimi's new evidence did show that his Libyan conviction was *traceable* to his U.S. detention (or

---

[11] *See Gul*, 652 F.3d at 16 (assuming, without deciding, the collateral consequences doctrine applied to two former Guantanamo detainees' petitions).

11

designation), it is not *redressable*. For if this Court were to reinstate his habeas petition and give a favorable ruling, it would not somehow undo his Libyan criminal conviction or have any other effect on the current Libyan government's decision to enforce that conviction. *See Kiyemba v. Obama*, 561 F.3d 509, 515 (D.C. Cir. 2009) ("It is a longstanding principle of our jurisprudence that '[t]he jurisdiction of [a] nation, within its own territory, is necessarily exclusive and absolute.'" (quoting *Schooner Exch. v. McFaddon*, 11 U.S. (7 Cranch) 116, 136, 3 L.Ed. 287 (1812)); *id.* ("*Munaf* [*v. Geren*, 553 U.S. 674 (2008)] therefore bars a court from issuing a writ of habeas corpus to shield a detainee from prosecution and detention by another sovereign according to its laws."); *see also Idema v. Rice*, 478 F. Supp. 2d 47, 52 (D.D.C. 2007). Accordingly, Rimi has failed to demonstrate that he suffers from ongoing collateral consequences of his former U.S. detention, and his habeas petition remains moot. As such, his independent action seeking to reinstate that petition fails to state a claim and must be dismissed.

## CONCLUSION

Thus, for all of the foregoing reasons, the Court GRANTS the Government's Motion to Dismiss. A separate Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD L. LEON
United States District Judge